## 2033

William MARR, Respondent v. CITY OF COLUMBIA, Appellant.

(432 S.E. (2d) 493)

Court of Appeals

*Kenneth E. Gaines*, of *Office of the City Attorney*, Columbia, *for appellant*.

*Preston F. McDaniel*, Columbia, *for respondent*.

Heard May 10, 1993; Decided June 21, 1993.

Reh. Den. Aug. 2, 1993.

SHAW, Judge:

Appellant, City of Columbia, filed a Form 21 to stop payment of workers' compensation benefits to respondent, William Marr, asserting Marr had reached maximum medical improvement. The single commissioner found the City failed to establish entitlement to stop payment. He further found Marr was entitled to a higher compensation rate, that the City was responsible for all of Marr's medical care and that temporary total disability benefits should continue "so long as [Marr] is actively enrolled and progressing normally" in a vocational rehabilitation program. The full commission and the circuit court affirmed. We affirm in part, reverse in part and remand in part.

The City raises the following issues on appeal:

1. Whether the circuit court erred in affirming the commission's order that the City continue payment of temporary disability benefits contingent upon Marr's participation in an educational course.

2. Whether the circuit court erred in finding that the reliable, probative and substantial evidence in the record supported the commission's finding that participation in the educational course would lessen the period of disability.

3. Whether the circuit court erred in determining that substantial evidence supported a finding that the employer was to provide further medical care.

4. Whether the circuit court erred in affirming the commission's finding that the City failed to offer Marr suitable employment when such a finding was irrelevant to a determination of the City's right to stop payment.

5. Whether the circuit court erred in denying the City's stop payment application where there was no reliable, probative or substantial evidence that Marr had not reached maximum medical improvement.

6. Whether the circuit court erred in affirming an adjustment in Marr's average weekly wage.

## FACTS

Marr had worked for the City for a period of seven months before he injured his back on July 27, 1988. He started in the position of utility worker. However, Marr testified when he was hired that he was told he would be promoted to a motor equipment operator as soon as he obtained a class 3 license.

When he started with the City he made $5.35 an hour. He testified he obtained the class 3 license prior to the accident. He further stated:

> Well, [the motor vehicle operator position] was suppose to come through in June or July. It (sic) said the paperwork had already come through. They were just waiting for it to come on my check. But it would have put me up to $6.50 an hour.

He claimed his foreman told him "to put down M.E.O." on the accident report because he had already been promoted. When asked on cross-examination whether he had actually worked a day on the job he was allegedly promoted to, Marr replied, "I was doing the job. I just wasn't getting paid for it."

Marr underwent surgery in October 1988 to relieve his back pain. Sometime between February and March of 1989, Marr was apparently fired from his employment with the City. In February, 1989, Marr's orthopaedic surgeon, Dr. Talley Parrott, referred him to a psychologist, Dr. Kenneth Trogdon, for treatment of depression. Dr. Trogdon determined Marr developed "a major mood disturbance associated with a work related back injury." He found the depression "developed secondary to the injury and the resulting failure to get relief from his pain" following surgery. He further opined that Marr was depressed to a degree that he could not fully participate in his own rehabilitation without psychotherapeutic assistance. After receipt of Dr. Trogdon's report, Dr. Parrott placed Marr on an antidepressant drug and recommended he receive psychological treatments. In August, 1989, Dr. Parrott determined Marr had reached maximum medical improvement and gave him a permanent impairment rating of 15% of the whole person. However, he noted in his records that Marr should continue his treatment with Dr. Trogdon. Shortly thereafter, Dr. Trogdon determined that, from a psychological point of view, Marr had stabilized. However, he found Marr had "residues of the major depression he developed secondary to his work related back injury" and that Marr had "a collective impairment of forty percent" of the whole person.

In October of 1989, Marr fell when his legs cramped and injured his back further. He returned to Dr. Parrott for treat-

ment and was started on physical therapy. In May of 1990, Dr. Parrott again determined Marr had reached maximum medical improvement, this time finding a 20% permanent impairment rating of the whole person. Marr was seen by Dr. Parrott on June 26, 1990 at which time Dr. Parrott recommended light duty work. Dr. Parrott further indicated he would see Marr back in 3 months.

On July 9, 1990, Marr was seen by another orthopaedic surgeon, Dr. James McCarthy. His evaluation and recommendation stated as follows:

> I frankly do not know that I have a great deal more to offer this patient. I think since he has continued to have this much difficulty at least an MRI or CT scan could be done to rule out the possibility of further damage in these areas. If nothing else is done then we would have to assume this man has reached maximum medical benefit. I am not in a position to evaluate his depression but I think he needs to continue under a psychiatrist for this. Based on the above findings it is my opinion that this man has a 65% impairment of the spine which would then be of a permanent nature and direct result of his injury of 27 July, 1988 while employed by The City of Columbia. Advised him to continue with his present physician.

A hearing was held on August 22, 1990 to determine whether the City could stop payment of compensation. The record was left open at the hearing for submission of the deposition of Dr. McCarthy. On October 3, 1990, Marr moved to reopen the record for submission of additional evidence on the basis that he suffered another fall as the result of his back injury subsequent to the hearing. The single commissioner filed his order on February 20, 1991 wherein he granted the motion to reopen the record. He found, based on the evidence, that Marr had been promoted to the higher paying position prior to the accident and was entitled to a resulting compensation rate of $160.01 instead of $140.00 rate he had been receiving and that the City should pay the difference in the rates for the past due temporary total disability benefits. He further found Marr was still under the care of Dr. Parrott, he was unable to return to work in the job he was working prior to the injury

and was in need of vocational rehabilitation to be employable, he was enrolled in a vocational rehabilitation program at a technical college which would tend to lessen the degree of disability, and that his depression and anxiety, resulting in medical care, was causally related to the injury and its aftermath and therefore should be paid as authorized medical care. He further found that the City had not offered nor procured employment for Marr within his capacity and that the City failed to establish by a preponderance of the evidence that it was entitled to stop payment of benefits. HE ordered the City to pay the difference in the compensation rates from the date of the injury, to pay all medical care including that provided by the psychologist, and to pay temporary total disability benefits to Marr so long as he was actively enrolled and progressing normally in that program. The full commission summarily affirmed the single commissioner.

*ISSUES 1 & 2*

The City contends lack of education is not a compensable disability and it was therefore error, under S.C. Code Ann. § 42-9-10 (Supp. 1992) to order disability payments to continue as long as Marr was "enrolled and progressing normally" in the vocational rehabilitation program. It further argues there is no substantial evidence in the record to support a finding that participation in vocational rehabilitation would lessen the period of disability. We agree.

Marr asserts, under S.C. Code Ann. § 42-15-60 (1985) the commission may order such other treatment as will tend to decrease the degree of disability and that training and experience of the injured worker is a proper consideration under § 42-9-10.

§ 42-15-60 contemplates the *payment of medical care and "other treatment"* by the employer when, in the judgment of the commission, it would tend to lessen the period of disability. Even if the vocational rehabilitation course would properly be considered as other treatment, this section is inapplicable, as the City was not ordered to pay for the educational course, but was ordered to continue disability payments contingent upon Marr's enrollment and progression in the course.

S.C. Code Ann. § 42-9-10 (Supp. 1992) provides in part:

When the incapacity for work resulting from an injury is total, the employer shall pay, or cause to be paid, as provided in this chapter, to the injured employee *during the total disability* a weekly compensation. . . . In no case may the period covered by the compensation exceed five hundred weeks except as hereinafter provided.
(Emphasis added.)

S.C. Code Ann. § 42-1-120 (1985) defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

Disability in compensation cases is measured by loss of earning capacity. Total disability does not require complete helplessness, but the general test is an inability to perform services other than those that are so limited in quality, dependability or quantity that no reasonable stable market exists for them. *Wynn v. Peoples Natural Gas Company of S.C.*, 238 S.C. 1, 118 S. E. (2d) 812 (1961).

The commission made no ruling on Marr's loss of earning capacity. Further, as noted by the City, there is no evidence that would show participation in the course would lessen the period of disability. The commission clearly erred in making the disability payments contingent upon Marr's participation in the educational course. Conceivably, Marr's disability could end prior to completion of the course. We therefore reverse this portion of the order.

*ISSUE 3*

The City next contends the evidence supported a finding of maximum medical improvement and that nothing could be done to effect a cure or give relief to Marr and there was no evidence of any further medical care that would lessen the period of disability. We disagree. There is evidence (1) Marr continued to see his orthopaedist, Dr. Parrott, (2) that Dr. McCarthy indicated the possible need of further treatment, and (3) the evidence showed a need for continuing psychological therapy.

*ISSUES 4 AND 5*

The City contends it was error for the commission to make

findings regarding the City's failure to offer suitable employment to Marr, thereby denying the City's stop payment application. It further argues it was only necessary to establish that Marr had reached maximum medical improvement in order to stop payment of temporary total benefits and substantial evidence of record showed Marr had reached maximum medical improvement. We disagree.

25 S.C. Code Ann. Regs. 67-10 (1989) provides in part as follows:

> Compensation cannot be discontinued after an Award has been made or an agreement between the parties approved until the full Award has been paid, except as herein set forth. Disability will be presumed to continue until the employee returns to work. In the event the insurance carrier or employer desires to stop payment of compensation to the employee, the insurance carrier or employer shall file with the Commission a conditional waiver properly executed by the employee for a request for permission to discontinue compensation payments upon forms prepared by the Commission. The request shall set forth the reasons the insurance carrier or employer desires to discontinue compensation payments, and the request shall be accompanied by a proper medical certificate to certify that the employee is able to return to the same job or other suitable job, and that such job has been provided by the employer, or that the employee has refused medical treatment. The request shall also include evidence of service upon the employee, and his attorney if one be of record, by certified mail of the copy of the request.

Under this regulation, without a waiver, the City was required to attach a medical certificate certifying that (1) Marr was able to return to the same job or other suitable job, and such job had been provided by th the City or, (2) Marr had refused medical treatment. There is no evidence in the record that the City complied with either of these provisions.

*ISSUE 6*

S.C. Code Ann. § 42-1-40 (1985) provides as follows:

"Average weekly wages" means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States Government if the amount of such allowance is reported monthly by such trainee to his employer, divided by fifty-two. If the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. When the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, so long as results fair and just to both parties will be obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impracticable to compute the average weekly wages as defined in this section, regard is to be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

Under § 42-1-40, Marr's average weekly wage should be computed by dividing the earnings during the period he worked prior to the accident by the number of weeks worked, "so long as results fair and just to both parties will be obtained." However, when for exceptional reasons it would be unfair to either the City or Marr to use this method, a method

may be employed which would most nearly approximate the amount which Marr would be earning were it not for the injury. Neither the commission nor the circuit court addressed whether exceptional reasons existed such that it would be unfair to employ the usual means of computation. We therefore remand this issue for reconsideration under § 42-1-40.

In summary, we affirm the denial of the stop payment application, reverse the finding that disability benefits continue as long as Marr is actively enrolled in an educational program and remand the issue of adjustment of Marr's weekly wage for consideration under § 42-1-40 (1985).

Affirmed in pat, reversed in part and remanded in part.

CURETON and GOOLSBY, JJ., concur.